UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SCOT STOLKNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:15-cr-00143-JDL-1 |
| | ) | 2:17-cv-00420-JDL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Scot Stolkner moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 203.) Following a guilty plea, Petitioner was convicted of two counts of conspiracy to distribute controlled substances, and of aiding and abetting the crime; the Court sentenced Petitioner to 210 months in prison. (Judgment, ECF No. 173 at 1-2.)

Petitioner asserts claims his counsel was ineffective because counsel failed to file a notice of appeal from the sentence (Motion at 15, 17); failed to investigate adequately prior to the plea and therefore erroneously advised Petitioner he would be subject to a career offender sentencing enhancement (*id.* at 19-20); and failed to object to sentencing enhancements for an aggravating role and for knowingly involving a pregnant woman in the offense (*id.* at 31-33).

Following a review of Petitioner's motion, the Government's request for dismissal, and the record, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner pled guilty to two counts of a superseding indictment that charged him, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, 851; and 18 U.S.C. § 2, with conspiracy to distribute and to possess with intent to distribute controlled substances, and with aiding and abetting the crime. (Superseding Indictment, ECF No. 54 at 1-2; Judgment at 1.) Count 1 alleged the crime took place from January 2015 through at least approximately July 2015, and the substances were heroin, fentanyl, and alpha-pyrrolidinovalerophenone (a-PVP). (Superseding Indictment at 1.) Count 2 alleged the crime took place from August 2014 through approximately December 2014, and the substance was heroin. (*Id.*)

Petitioner entered his guilty plea pursuant to a plea agreement pursuant to which the parties agreed to make binding recommendations regarding the length of the sentence. Petitioner agreed to recommend a sentence of 188 months, and the Government agreed to recommend a sentence of 235 months. (Plea Agreement, ECF No. 116 at 2-3; Plea Tr., ECF No. 210 at 22-26.) The plea agreement provided that if the Court imposed a prison term of more than 235 months, Petitioner was permitted to withdraw the guilty plea. (*Id.* at 3.)

The plea agreement also incorporated a waiver of Petitioner's right to appeal:

Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, Defendant waives the right to appeal the following:

> A. Defendant's guilty plea and any other aspect of Defendant's conviction in the above-captioned case; and
>
> B. A sentence of imprisonment that does not exceed 235 months.

(*Id.* at 4.)

At the plea hearing, before Petitioner pled guilty, Petitioner admitted to a prior conviction, alleged pursuant to 21 U.S.C. § 851, for a 2008 Maine felony aggravated trafficking of scheduled drugs, Docket No. PORSC-CR-2007-02973, for which Petitioner was sentenced to a prison term of eight years. (Information, ECF No. 100; Plea Tr. at 9-10.) Before Petitioner admitted the prior offense, in response to the Court's inquiry, Petitioner told the Court he had read the information, he had discussed it with counsel, and he understood it. (Plea Tr. at 9-10.)

Petitioner also told the Court, in response to the Court's questioning, that he had reviewed the Government's version of the offense, he understood it, he had sufficient time to review it with counsel, and he did not disagree with any of the evidence set forth in the Government's version. (Government's Version, ECF No. 115; Plea Tr. at 21-22.)

In response to the Court's inquiry about the plea agreement, Petitioner told the Court he signed the agreement voluntarily, and that he understood, as part of the agreement, he waived his right to appeal from a sentence of up to 235 months. (Plea Tr. at 22-26, 28.) The Court explained that because the plea agreement contained provisions for binding recommendations regarding the length of the sentence, the Court would reserve until sentencing its decision whether to accept the plea agreement. (*Id.* at 31.)

3

At the sentencing hearing, the Court asked Petitioner whether he had read the entire revised presentence investigation report, whether he had had sufficient time to discuss it with counsel, whether counsel had answered his questions about the report, and whether Petitioner understood the report; Petitioner responded affirmatively to all of the questions. (Sentencing Tr., ECF No. 222 at 5-6.) In response to the Court's additional questions, Petitioner asserted that the report contained no inaccuracies, and the information in the report was true to his personal knowledge. (*Id.* at 7.) The Court found the facts as set forth in the report. (*Id.* at 56.)

The sentencing guidelines calculation was determined as follows: the base offense level was 30, pursuant to USSG § 2D1.1(a), (c)(5). Two levels were added, on either of two alternate bases: (1) that Petitioner was subject to an adjustment under USSG § 2D1.1(b)(15)(B)(iii), because Petitioner had an aggravating role in the offense, pursuant to USSG § 3B1.1, and he knew one of the participants in the conspiracy was pregnant; or (2) that Petitioner had an aggravating role and earned in excess of a specified amount from the heroin sales.[1] Four levels were added, pursuant to USSG § 3B1.1(a), because Petitioner was an organizer or leader of a criminal activity that involved the five participants (including Petitioner) named in the Government's version (ECF No. 115 at 2). The adjusted offense level, therefore, was 36.

---

[1] The second revised presentence investigation report stated the two-level increase was justified based on the fact that Petitioner was subject to an aggravating role enhancement, and he "earned in excess of $14,500 solely for the heroin sales described by CS-1 (to which the defendant did not object) . . . ." (Report 25.) The Court considered this issue, including the uncertainty regarding the calculation of the dollar amount, when it considered the sentencing factors under 18 U.S.C. § 3553(a). (Sentencing Tr., ECF No. 222 at 64.)

4

The report explained that because the adjusted offense level of 36 was above the career offender level of 34, the higher adjusted offense level of 36 applied, pursuant to USSG § 4B1.1(b). Three levels were subtracted for acceptance of responsibility, pursuant to USSG § 3E1.1, and thus the total offense level was 33. Although Petitioner's career offender status did not determine his adjusted offense level, it increased his criminal history category to Category VI, pursuant to USSG § 4B1.1(b); without career offender status, it would have been Category V. (Report ¶¶ 21-33 (offense level computation), ¶¶ 52-53 (criminal history computation).) The revised presentence investigation report also discussed the effect of the plea agreement, and it reiterated that the plea agreement provided that Petitioner waived his right to appeal any sentence that did not exceed a total of 235 months. (Report ¶ 74.)

After the Court found the facts as set forth in the revised presentence investigation report and determined the guideline range to be from 235 to 293 months, the Court next considered the sentencing factors, pursuant to 18 U.S.C. § 3553(a). (Sentencing Tr. at 57.) The Court focused particularly on the seriousness of the drug conspiracy, given the significant period of time over which it occurred, the massive quantities of drugs, and the resulting harm to the community. (Sentencing Tr. at 60.) The Court declined to grant a downward variance for the career offender criminal history category, as it found Category VI did not overstate Petitioner's criminal history. (*Id.* at 63.) The Court, however, concluded the enhancement under USSG § 2D1.1(b)(15)(B)(iii) overstated the seriousness of Petitioner's awareness that the participant was pregnant, because he knew about the pregnancy for only a few days before he was apprehended. (*Id.* at 63-64.) Regarding the

alternate basis for the two-level enhancement based on the amount of money Petitioner earned, the Court noted that the sentence took into account both the enhancement and the uncertainties involved in the calculation of the amount of money Petitioner earned. (*Id.* at 64.) The Court also considered Petitioner's age and the length of the sentence in the downward variance. (*Id.* at 65.)

The Court sentenced Petitioner in November 2016 to a below-guidelines prison term of 210 months on each count, with the terms to be served concurrently, to be followed by concurrent terms of six years of supervised release. (Sentencing Tr. at 67; Judgment at 2-3.) The Court found that because the sentence did not exceed 235 months, Petitioner waived his right to appeal, pursuant to the plea agreement. (Sentencing Tr. at 72-73.)

Petitioner asserts that he placed his section 2255 motion in the prison mailing system on a date in October 2017; the Government does not contest the timeliness of the motion. (Motion at 13; Response at 1.)

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

6

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978) (quotation marks omitted)). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993); *United States v. Isom*, 85 F.3d 831, 838 (1st Cir. 1996) (applying *McGill* to a case involving a guilty plea).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. The Supreme Court has noted that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court set forth the federal constitutional standard by which claims of ineffective assistance of counsel are evaluated; *Strickland* requires a petitioner to demonstrate that "counsel's representation

7

fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one . . . ." *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

### B. Claims and Analysis

#### 1. Claim regarding failure to file notice of appeal

Petitioner alleges that when counsel reviewed the plea with him, when counsel reviewed the presentence investigation report with him, and at sentencing, Petitioner told counsel that he did not believe the sentencing enhancements applied.[2] (Motion at 38.) Petitioner alleged counsel told him he would "look into it." (*Id.*) Petitioner alleged that after sentencing, he asked counsel to file an appeal:

> After my sentencing I specifically told my attorney that I wanted to file an appeal, because I felt that the enhancements, the career offender finding, and my sentence was wrong. My attorney again assured me he was going to look into it. I took that to mean that he was going to file an appeal.

---

[2] The Government argues that some of Petitioner's allegations are set forth in attachments that were not signed under penalty of perjury, as required under Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings. *See* 28 U.S.C. § 1746. (Response, ECF No. 219 at 14 & n.2.) The form section 2255 motion Petitioner used provides that a petitioner may attach additional pages if more than four grounds are asserted, but it does not appear to require that each of the attachments be separately signed under penalty of perjury. (Motion, ECF No. 203 at 4.) This recommended decision assumes, without recommending a decision on the issue, that if the Court did not dismiss the section 2255 motion, the Court would permit Petitioner to file a version that contained the required declaration if necessary.

(*Id.*)

The Government filed a declaration of Petitioner's counsel, who stated he did not recall that Petitioner ever asked him to file a notice of appeal. (Declaration, ECF No. 219-1.) Counsel further stated that if Petitioner had asked him to appeal, counsel would have advised him that the sentence was not appealable due to the waiver of appeal contained in the plea agreement, but counsel nevertheless would have filed a notice of appeal had Petitioner insisted upon it. (*Id.*) In Petitioner's reply, he reiterated the allegations he made in the section 2255 motion. (Reply, ECF No. 221; Affidavit, ECF No. 221-1.)

When a defendant directs counsel to file an appeal, counsel is obligated do so.[3] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Counsel also has "a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.[4]

---

[3] While counsel is not required to file a frivolous appeal, if a defendant directs counsel to file an appeal that counsel believes is "wholly frivolous," counsel must move to withdraw and include in the motion "a brief referring to anything in the record that might arguably support the appeal." *Anders v. California*, 386 U.S. 738, 744 (1967).

[4] The Supreme Court has granted certiorari in a case that presents the following question: "Does the 'presumption of prejudice' recognized in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), apply where a criminal defendant instructs his trial counsel to file a notice of appeal but trial counsel decides not to do so because the defendant's plea agreement included an appeal waiver?" *Garza v. Idaho*, 162 Idaho 791, 405 P.3d 576 (2017), *cert. granted*, --- S. Ct. ---, 2018 WL 534810, 2018 U.S. Lexis 3713 (U.S. June 18, 2018) (No. 17-1026). *Garza* is distinguishable from Petitioner's case, because in *Garza*, it is undisputed that the defendant told counsel he wanted counsel to file an appeal. 405 P.3d at 578 (noting that "Garza instructed his attorney to appeal"). As discussed below, in Petitioner's case, the

9

In Petitioner's case, however, the record lacks any credible support for Petitioner's allegation that he directed counsel to file a notice of appeal. Petitioner signed a plea agreement in which he agreed to waive his right to appeal from the sentence if the sentence did not exceed 235 months. (Plea Agreement at 4.) During the plea hearing, Petitioner orally acknowledged the waiver. (Plea Tr. at 25-29.) At sentencing, Petitioner affirmed there were no inaccuracies in the revised presentence investigation report, which discussed the effect of the plea agreement and explicitly provided that Petitioner waived his right to appeal any sentence that did not exceed 235 months. (Sentencing Tr. at 7; Report ¶ 74.) Because the Court sentenced Petitioner to 210 months, pursuant to the plain terms of the written plea agreement, Petitioner waived his right to appeal. (Sentencing Tr. at 72-73.)

In somewhat similar circumstances, in *Zanuccoli v. United States*, 459 F. Supp. 2d 109 (D. Mass. 2006), reasoning that a section 2255 petitioner "had no reason to appeal his sentence, because he received *exactly* the sentence agreed upon in his plea bargain" and noting that the petitioner "expressly waived his right to appeal," the court found the claim to be "highly implausible." *Id.* at 111-112 (emphasis in original).[5] *See also United States v. Rivera*, No. 1:10-cr-10433-GAO-2, 2015 WL 6697267, at *1, 2015 U.S. Dist. Lexis 148912, at *3 (D. Mass. Nov. 3, 2015) (argument that counsel ignored request "strain[ed] credulity"); *Gonzalez v. United States*, No. 1:08-cr-10223-PBS,

---

Government disputes Petitioner's contention that he told counsel to appeal, and there exists no record support for Petitioner's allegation.

[5] The court in *Zanuccoli v. United States* also observed that the petitioner's counsel expressly contradicted the claim through an affidavit in which counsel asserted that he had no recollection of petitioner directing that he file an appeal and that his ordinary practice would be to file an appeal if requested. *Zanuccoli v. United States*, 459 F. Supp. 2d 109, 112 (D. Mass. 2006).

10

2012 WL 5471799, at *5, 2012 U.S. Dist. Lexis 160230, at *12-15 (D. Mass. Nov. 8, 2012) (hearing denied despite conflicting record evidence, noting that the petitioner's contention that counsel ignored a request to file an appeal was unreliable in the absence of corroboration, particularly where the sentence received was consistent with plea agreement (citing *United States v. Butt*, 731 F.2d 75, 80 n.5 (1st Cir. 1984) (holding that assertions of attorney misrepresentation require specific allegations and usually some independent corroboration to obtain an evidentiary hearing)).

Petitioner's claim is, likewise, "highly implausible." To permit Petitioner to proceed on a "highly implausible" claim based simply on a bald assertion that he instructed counsel to file an appeal would be inconsistent with the principle that "[p]ostconviction relief on collateral review is an extraordinary remedy, available only on a sufficient showing of fundamental unfairness." *Singleton v. United States*, 26 F.3d 233, 236 (1st Cir. 1994).

### 2. Claim regarding Petitioner's career offender status

Petitioner alleges counsel's performance was deficient, and Petitioner was prejudiced, because counsel failed to investigate and argue Petitioner's predicate offenses did not qualify him for career offender status. (Motion at 19-27.) Petitioner relies on *United States v. Mulkern*, 854 F.3d 87 (1st Cir. 2017), which the First Circuit decided after Petitioner's sentencing.[6]

---

[6] In *United States v. Mulkern*, 854 F.3d 87, 97 (1st Cir. 2017), the First Circuit concluded that a state court heroin conviction did not qualify as a "serious drug offense," for purposes of an increased mandatory sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). The Court noted that "a crime that does not have possession with intent to distribute as a formal element can qualify as a 'serious drug offense' if it involves possession with intent to distribute." *Id.* at 96. "The difficult question is what

11

The Government acknowledges that given *Mulkern*, two prior offenses included in the revised presentence investigation report as career offender predicates, for purposes of USSG § 4B1.1(a), were "not as definitive," based on the available documentation. (Response at 23.) "It is therefore not possible, based on the record as it now stands, to determine whether Stolkner's 2001 and 2005 convictions are subject to the type of challenge raised by the defendant in *Mulkern*." (*Id.* at 24.) In other words, the Government acknowledges that under *Mulkern*, the only conviction included in the revised presentence investigation report that would clearly qualify as a career offender prerequisite would be the 2008 conviction to which Petitioner admitted. (*Id.* at 23-24.)

Nonetheless, as the Government argues (*id.* at 24), counsel's performance was not deficient regarding the career offender issue. *Mulkern* was decided in April 2017, *i.e.*, after Petitioner's November 2016 sentencing; counsel's failure to anticipate a change in the law did not constitute deficient performance or cause prejudice. *See United States v. Fields*, 565 F.3d 290, 296 (5th Cir. 2009) (noting that "counsel need not anticipate changes in the law or raise meritless objections"); *Geter v. United States*, 534 F. App'x 831, 836 (11th Cir. 2013) (per curiam) ("It is well-settled that an attorney's failure to anticipate a change in the law will not support a claim of ineffective assistance of appellate counsel.").

Furthermore, Petitioner was not prejudiced by counsel's failure to challenge the 2001 and 2005 offenses as career offender predicates. First, Petitioner's career offender

---

is the right amount of drugs a person must possess" before a "'presumption of an intent to distribute is appropriate . . . .'" 854 F.3d at 96 (quoting *United States v. Brandon*, 247 F.3d 186, 192 (4th Cir. 2001)). The Court concluded that the 2-gram threshold amount of heroin required for a conviction under 17-A M.R.S. §§ 1101(17), 1103(1-A), did not justify "an inference of intent to distribute," and therefore the conviction did not qualify as a predicate offense under the ACCA. *Id.* at 94, 97.

status did not affect his offense level, because the career offender adjusted offense level of 34 was not higher than the otherwise-applicable adjusted offense level of 36, and therefore, pursuant to USSG § 4B1.1(b), the otherwise-applicable adjusted offense level of 36 applied.[7] In addition, although Petitioner's career offender status did affect his criminal history category, which was Category VI rather than the Category V otherwise applicable to Petitioner, because the Court sentenced Petitioner to a below guidelines sentence within the sentencing range for the offense level (33) and a Category V criminal history (210 – 262 months), Petitioner was not prejudiced. In fact, the Court sentenced Petitioner to the absolute low end of the range for the applicable offense level and a Category V criminal history. The Court's findings at sentencing underscore the lack of prejudice. At sentencing, the Court stated:

> [I]f the defendant was not being sentenced in Criminal History Category VI but was instead being sentenced in Criminal History Category V, which is the category that would apply if he was not a career offender, I have already told you that I am not varying based upon the career offender designation, but it seems to me that my sentence in the end takes that into consideration or at least it accounts for it to some degree.

(Sentencing Tr. at 66.)

In short, Petitioner cannot demonstrate that his counsel's performance was substandard, nor can he demonstrate prejudice. Plaintiff, therefore, cannot prevail on the

---

[7] USSG § 4B1.1(b) states in part: "If an adjustment from §3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment." Thus, in Petitioner's case, the career offender total offense level was 31, whereas the otherwise-applicable total offense level was 33. The total offense level of 33 applied, pursuant to USSG § 4B1.1(b), because it was the higher of the two.

13

claim that was based on counsel's failure to challenge Petitioner's status as a career offender.

### 3. Claim regarding other sentencing enhancements

Petitioner contends counsel's performance was substandard because counsel failed to challenge the sentencing enhancements for an aggravating role, pursuant to USSG § 3B1.1(a), and for knowingly involving a pregnant woman in the conspiracy, pursuant to USSG § 2D1.1(b)(15(B)(iii).

Petitioner argues the enhancement for an aggravating role was unsupported. (Motion at 33.) Section 3B1.1(a) provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels." Petitioner concedes there may have been three persons involved, including himself, but he disputes that there were five. (Motion at 33-35.) He alleges he asked counsel to raise the issue, but counsel told him "[counsel] would not challenge the enhancement because it would look like [Petitioner] was not accepting responsibility." (*Id.* at 33.)

Petitioner's statements in the plea colloquy and at sentencing contravene his section 2255 allegations and preclude the claim. At the plea colloquy, in response to the Court's questions, Petitioner affirmed that he had read, reviewed with counsel, and understood the Government's version of the offense, and he did not dispute any of the evidence set forth in the Government's version. (Plea Tr. at 21-22.) The Government's version states in relevant part:

14

> As part of this investigation, agents utilized a cooperating individual (CI) who conducted a series of controlled buys of fentanyl, heroin, and/or a-PVP from several members of the conspiracy including Wil Chabot, Angela Green, Kris Dahlquist and Jonathan Day. Each of these controlled buys followed DEA standard protocol. The calls setting up each transaction and the conversation occurring during each transaction were recorded. DEA agents conducted surveillance of each transaction [and] would observe the interaction between the CI and [the] other person. In each of these controlled buys, the CI would arrange the order by calling Stolkner, but someone other than Stolkner would conduct the actual transaction with Stolkner usually present in the proximate area of the transaction.

(Government's Version at 2.)

At sentencing, in response to the Court's inquiry, Petitioner told the Court he had read the revised presentence investigation report, he had had sufficient time to review it with counsel, and he understood the report. (Sentencing Tr. at 5-6.) He affirmed that the information in the report was true to his personal knowledge. (*Id.* at 7.) The report states in relevant part: "The defendant was an organizer or leader of a criminal activity that involved five or more participants (Stolkner, Green, Day, Chabot, and Dahlquist, per the Prosecution Version) or was otherwise extensive; therefore, four levels are added. USSG §3B1.1(a)." (Report ¶ 27.)

The five participants required to qualify for a four-level increase in offense level for an aggravating role, pursuant to USSG § 3B1.1(a), may include the defendant. *See United States v. Haywood*, 777 F.3d 430, 433 (7th Cir. 2015) ("A 4-level increase is warranted under § 3B1.1(a) if the defendant participated in a criminal activity involving at least five participants (including himself) and organized or led at least one of the other participants.") (citing, *inter alia*, USSG § 3B1.1 cmt. n.2). Because the aggravating role

enhancement is supported by the facts and the law, Petitioner's related claim of ineffective assistance lacks merit. *See Tse*, 290 F.3d at 465.

Similarly, because the two-level enhancement for knowingly involving a pregnant woman in the conspiracy, pursuant to USSG § 2D1.1(b)(15)(B)(iii), is supported by the facts and the law, the related ineffective assistance claim lacks merit. *See id.* Section 2D1.1(b)(15)(B)(iii) provides in relevant part that a two-level increase applies

> [i]f the defendant receives an adjustment under §3B1.1(Aggravating Role) and the offense involved 1 or more of the following factors: . . . the defendant, knowing that an individual was . . . pregnant, . . . involved that individual in the offense.

The revised presentence investigation report, which, as discussed above, Petitioner reviewed with counsel, understood, and did not dispute, states in relevant part that "Stolkner knew that Green was pregnant and (still) involved her in the conspiracy . . . ." (Report ¶ 25.) Petitioner, therefore, cannot prevail on his claim based on counsel's alleged failure to challenge the enhancements.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

# NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of June, 2018.